IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNADETTE JOSEPH, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-260 |
| | ) | |
| ACCESS DATA CORP., VOYAGER | ) | Judge Lancaster |
| JET CENTER, LLC, and KARL | ) | Magistrate Judge Mitchell |
| FOERSTER, | ) | |
|     Defendants. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion for summary judgment submitted on behalf of Defendant Access Data Corp. (Docket No. 11) be granted.

II.    Report

Plaintiff, Bernadette Joseph, brings this action pursuant to 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-63 (PHRA). She alleges that the Defendants, Access Data Corp., Voyager Jet, LLC and Karl Foerster, discriminated against her on the basis of her gender, that she was subjected to a sexually hostile work environment and that Defendants retaliated against her for complaining about discrimination in the workplace.

Presently before this Court for disposition is a motion for summary judgment filed by Access Data Corp ("Access"). Access moves for summary judgment on the grounds that it was not Plaintiff's employer for purposes of Title VII or the PHRA. For the reasons that follow, the motion should be granted.

Facts

Plaintiff worked as a flight attendant for Voyager Jet Center, LLC ("Voyager") from May 2005 to May 2006. (Compl. ¶¶ 1, 11.) She alleges that Access and Voyager are liable for sex discrimination, sexual harassment and retaliation for complaining about harassment and discrimination based upon the acts of Karl Foerster, Vice President of Operations. She alleges that Foerster touched and kissed her without her consent or permission, made sexual advances to her which she rejected, after which he denied her a raise, a corporate charge card and a commission she was owed for work done in connection with the sale of an aircraft. (Compl. ¶¶ 10-16.) Finally, in May 2006, when she was required to serve as a flight attendant on a chartered five-day trip along with Foerster and other employees, she alleges that Foerster requested admittance to her hotel room, which she denied, and that he touched her inappropriately when he encountered her in the galley of the aircraft. (Compl. ¶¶17-19.) When she complained about this behavior to Richard Ryan, Foerster's supervisor, Ryan told her he did not believe her and berated her for making allegations against Foerster that could be detrimental to his career. Therefore, she states that she had no choice but to resign and that she was constructively discharged on May 10, 2006. (Compl. ¶¶ 20-23.)

Procedural History

Plaintiff filed this action on February 28, 2007. Count I alleges that Foerster created a sexually hostile work environment and that she made management aware of it, but nothing was done. Thus, she alleges that Access and Voyager are liable for sex discrimination, a sexually hostile work environment and retaliation, in violation of Title VII. Count II alleges that these same facts violated her rights under the PHRA. Count III is a state law claim for assault and

battery against Foerster.

On August 16, 2007, Access filed a motion for summary judgment.

Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

Access contends that it was not Plaintiff's "employer," and therefore she cannot maintain a Title VII or PHRA claim against it. Plaintiff responds that there are genuine issues of material fact precluding the entry of summary judgment as to this matter.

Title VII provides that:

It shall be an unlawful employment practice for an employer

> (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex....

42 U.S.C. § 2000e-2(a). "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b).

Similarly, the PHRA provides that it is an unlawful employment practice:

> For any employer because of the ... sex ... of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a). The term employer includes a person employing four or more persons and includes the Commonwealth. 43 P.S. § 954(b).

Plaintiff cites <u>Nesbit v. Gears Unlimited, Inc.</u>, 347 F.3d 72 (3d Cir. 2003). In that case, the Court of Appeals held that a company and its affiliates will constitute a single employer for purposes of the fifteen-employee threshold of Title VII when: 1) the company has split itself into entities of less than fifteen employees to evade the statute's reach; 2) the parent directs the subsidiary's discriminatory act; or 3) the test for consolidation in bankruptcy is met. The third test is an "open-ended, equitable inquiry ... to determine when substantively to consolidate two entities." <u>Id.</u> at 87. In the Title VII context, courts should focus on "operational entanglement–whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." <u>Id.</u> The court stated that:

4

> Relevant operational factors include (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions ( e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

Id.

However, that case concerned the issue of the circumstances under which two or more entities, each of which has less than the threshold amount of fifteen employees, can be combined for purposes of Title VII. In this case, both Access and Voyager admit that they are employers within the meaning of Title VII. (Answer ¶ 6.)[1] Thus, Nesbit may not even be relevant to the issues in this case. See Daniel v. City of Harrisburg, 2006 WL 543044, at *2 (M.D. Pa. Mar. 6, 2006) (expressing doubt that Nesbit applies in a situation in which both entities have the minimum number of employees). In any event, Plaintiff has not demonstrated that the factors outlined in Nesbit demonstrate that Access was operationally entangled with Voyager.

Daniel P. Cwenar, President of Access (Cwenar Decl. ¶ 1)[2], states that Access is a privately held Delaware corporation registered to do business in Pennsylvania. (Cwenar Decl. ¶ 2.) He states that Access develops and sells software and related services to the financial services industry and that Access is not involved in any way in the business of aircraft management or aircraft charter. (Cwenar Decl. ¶ 3.)

Cwenar states that Access was never Plaintiff's employer, that it did not control any terms

---

[1] Docket No. 6.

[2] Docket No. 11-2. Although Access indicates in its Concise Statement of Material Facts (Docket No. 13) that Cwenar's declaration is contained in its appendix of exhibits at "A," Access did not file an appendix in conjunction with its motion. The Cwenar declaration is attached to Access's motion for summary judgment.

or conditions of her employment and that it did not pay her or assign her any work. (Cwenar Decl. ¶ 4.) He explains that Access and Voyager are independent corporate entities and have no corporate relationship. Access does not manage or control any aspect of Voyager's business or operations, but rather assists Voyager in the occasional provision of technical support. (Cwenar Decl. ¶ 5.)

Finally, he states that none of the individuals identified in Plaintiff's complaint have any employment, independent contractor, or other relationship to Access. (Cwenar Decl. ¶ 6.)

Plaintiff responds that, when she began her employment, she was required to attend an orientation session which was conducted by Kristina Tardivo, the director of Human Resources for Access. She states that she was given an employee manual without a cover and that, when she asked Ms. Tardivo why the manual had no cover, she was told that it was actually the Access employee manual. (Joseph Aff. ¶¶ 2-4.)[3]

She also states that all of her human resources transactions such as her 401K requests, payroll inquiries, etc. were processed by Access. (Joseph Aff. ¶ 5.) She cites email messages bearing the address "accessdc.com" and submits an email message sent to Kristina Tardivo after her resignation from "Melissa Miller, Help Desk Analyst, Technology Response Center, Access Data Corp." in which Miller states that Plaintiff's email account must have already been terminated. (Pl.'s Resp. Ex. 5.) Further, she notes that James Dolan, and not Daniel Cwenar, is registered with the Pennsylvania Department of State, Corporations Bureau, as the President of Access. (Pl.'s Resp. Ex. 2.) She has also submitted a letter that was apparently part of her employee manual, in which James Dolan welcomes her to Voyager. (Pl.'s Resp. Ex. 3.)

---

[3]Pl.'s Resp. (Docket No. 26) Ex. 4.

Access has submitted a response to Plaintiff's Counterstatement of Material Facts, to which it attaches the declaration of Charles P. Falce, Senior Vice President of Human Resources of Voyager Group, LP ("Voyager Group"). (Falce Decl. ¶ 1.)[4] Falce states that Voyager Group is a private equity holding company that invests in businesses in the technology, aviation, natural resource, and resort development industries, in addition to portfolio investments in financial service and health care companies, and that Access and Voyager are both within the group of companies held by Voyager Group. (Falce Decl. ¶¶ 2-3.) He explains that James J. Dolan is the President and Chief Executive Officer of Voyager Group, that Kristina Tardivo is a Human Resources Specialist for Voyager Group, and that the portfolio companies held by Voyager Group, including Voyager and Access, have separate and independently-managed human resources policies, employee benefits procedures, and payroll systems. (Falce Decl. ¶¶ 4-6.) Access has submitted its employee handbook and Voyager's employee handbook, which are different. (Docket No. 32 Exs. B, C.)

Falce states that Access has never set policy for Voyager or had authority over Voyager employees, that it had no control or authority over the conditions of Plaintiff's employment, that it does not perform personnel or payroll functions and that it does not provide human resources support for Voyager. (Falce Decl. ¶¶ 7-10.)

Rather, he states that Access is a technology services company, and it provides the technology infrastructure for a number of the portfolio company held by Voyager Group. In addition, all electronic mail sent by Voyager Group companies is processed through Access servers, which is why email correspondence regarding Plaintiff's resignation bore an

---

[4]Docket No. 32 Ex. A.

"accessdc.com" address. (Falce Decl. ¶¶ 11-12, 19.)

Falce also states that Access is located at Two Chatham Center, Voyager Group's offices are located at 90 Beta Drive and Voyager is located at Allegheny County Airport, Hanger #43. (Falce Decl. ¶¶ 14-15.) He states that no documents relative to Plaintiff's employment were sent to or from Access or maintained by Access and that all documents were sent to or from and maintained at Voyager's Allegheny County Airport office and/or Voyager Group's Human Resources department. (Falce Decl. ¶¶ 17-18; See Docket No. 32 Ex. D.)

In <u>Walker v. Correctional Medical Systems</u>, 886 F. Supp. 515, 520 (W.D. Pa. 1995), Judge Ambrose held that, in determining whether a nurse, who was employed by Correctional Medical Systems (CMS) but who was assigned to work at the Allegheny County Jail, could sue both CMS and the County for retaliation under Title VII, the court would apply the test set by the Supreme Court in <u>Nationwide Mut. Insurance Co. v. Darden</u>, 503 U.S. 318 (1992), which requires the court to apply a thirteen-factor common law agency test when Congress has not defined the terms "employer" or "employee" in a statute. Judge Ambrose concluded that, although many of the <u>Darden</u> factors weighed against the conclusion that Walker was an employee of the County (CMS hired her, paid her, provided her benefits, supervised her, reviewed her work, set her work schedule, and her work was not the regular business of the County Jail), other factors supported the conclusion that Walker was a County employee: she reported to work at the County Jail, received some supplies and equipment from the County, and, most importantly, the warden of the jail had some control over her conditions of employment. Judge Ambrose concluded that "differing inferences could legitimately be drawn as to whether Walker was an employee of the County, and therefore the determination is properly a matter for

the factfinder to resolve." Id. at 521.

Another means by which multiple companies may be held liable is under the "joint employer" analysis. The Court of Appeals has developed a test under the National Labor Relations Act, NLRB v. Browning-Ferris Indus., 691 F.2d 1117 (3d Cir. 1982), and has applied it to employment discrimination cases under Title VII. In Browning-Ferris, the court held that "where two or more employers exert significant control over the same employees–where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment–they constitute 'joint employers' within the meaning of the NLRA." Id. at 1124.

In Graves v. Lowery, 117 F.3d 723 (3d Cir. 1997), court clerks who worked for a district justice who allegedly harassed them brought suit under Title VII against the Pennsylvania Supreme Court, which was technically their employer under the Unified Judicial System of Pennsylvania, and also against Dauphin County as a co-employer or joint employer. The court noted that "the proper inquiry under Title VII for determining employer status looks to the nature of the relationship regardless of whether that party may or may not be technically described as an 'employer.'" Id. at 728 (citation omitted).

In this case, Plaintiff has not pointed to evidence from which inferences could be drawn that Access and Voyager functioned as a single employer or were her joint employer. Most of Plaintiff's evidence has been explained and refuted by declarations and documents from Defendants' sources. She has not responded to Access's evidence that: Voyager Group is a holding company of which Access and Voyager are portfolio members, Kristina Tardivo is a Human Resources Specialist for Voyager Group, Access performs technology infrastructure and

9

maintains the servers that support Voyager Group companies including Voyager, and Voyager does not share Access's principal place of business.

It is true that the Pennsylvania Department of State website lists James Dolan, and not Daniel Cwenar, as the President of Access. However, in addition to Cwenar's testimony, Access has also submitted testimony by Falce that Cwenar is the President of Access (Falce Decl. ¶ 13), and it has submitted a management biography of Cwenar, which lists him as the President and Chief Operating Officer of Access (Docket No. 33 Ex. B). Assuming that the Department of State listing is correct, it cannot be determined when this information was last updated. It is also true that a Notice of Determination on Plaintiff's unemployment compensation matter was sent to "Voyager Jet Center" at "Two Chatham Center," which is Access's address. (Docket No. 26 Ex. 7.) However, this document was sent to Voyager by the Pennsylvania Department of Labor and Industry and it does not represent a "document relative to Plaintiff's employment."

In any event, these fact alone do not demonstrate that Access was so operationally entangled with Voyager that it should be deemed to be Plaintiff's "employer" for purposes of Title VII and the PHRA.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of Defendant Access Data Corp. (Docket No. 11) be granted.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: November 8, 2007